HARRY McCARTY v. TWIN CITY EGG & POULTRY
ASSOCIATION AND ANOTHER.[1]

November 10, 1927.

No. 26,282.

**Finding sustained by evidence that accidental injury to employe was not received in course of his employment.**

The circumstances attending an automobile trip undertaken after ten o'clock at night *held* such as to justify the industrial commission in holding that therein the employe was not in the course of his employment so as to entitle to compensation for an accidental injury suffered on the trip.

Workmen's Compensation Acts—C. J. p. 122 n. 40.

Certiorari to review an order of the industrial commission denying compensation to relator.   Affirmed.

*Doherty, Rumble, Bunn & Butler,* for relator.

*J. F. Boyles,* for respondents.

HOLT, J.

Certiorari to review a decision of the industrial commission refusing relator compensation for an arm fracture received in an automobile collision.

The collision occurred at about 11:30 p. m. of August 5, 1926, three miles south of Forest Lake upon highway No. 1.   Relator was in the employ of the respondent Twin City Egg & Poultry Association, having its main office in St. Paul.   He lived at Forest Lake and every morning reported at the main office for directions as to his day's work.   In his work he used his Ford roadster, receiving pay for the mileage traveled in the course of his duties.   He took orders for eggs and poultry, visited members of the association, and solicited new members.   He had no stated hours of work and often continued therein evenings.

[1]Reported in 216 N. W. 239.

On the day in question he arrived at his home in Forest Lake about 7 p. m. coming from Monticello, where he had been sent in the afternoon. After supper he saw two customers at Forest Lake, then went home. About 10 p. m. it occurred to him that he should go out to one Danninger, who lived one and one-half miles off of highway No. 1 and three or four miles from Forest Lake, to see if he could get names of some prospective customers. He invited one Oscar Johnson to ride with him. They drove to Danninger's and found the house dark; then instead of driving home drove on to Hugo, nine miles south of Forest Lake, to see a restaurant keeper there but, finding the restaurant closed, they started back to Forest Lake. When within three miles thereof, on a straight, well-graveled stretch of highway No. 1, they collided with a Buick sedan driven south by Arthur Remole. There was evidence that relator was drunk and swerved the car to the left of the center of the road, striking and shearing off the left front wheel of the Buick, which then was operated as closely as possible to the ditch on the west side of the road. Oscar Johnson was concededly drunk. He threw away one bottle of whisky and one was found on his person right after the collision. Relator denies that he had partaken of any liquor, accuses Remole of being drunk, claims to have been four or five feet to the left of the center of the road when struck by the Buick, and says that he did not notice that his companion was under the influence of liquor. He is corroborated as to his own condition by the doctor who attended his broken arm and others then present about half an hour after the accident.

Although the hearing developed that the employer and its insurer[1] sought to establish the intoxication of relator as a defense, we must assume that the commission concluded the burden of proof on that issue had not been carried by respondents. Section 4269, G. S. 1923, excepts from compensation "accidents which are intentionally self-inflicted or when the intoxication of such employe is the natural or proximate cause of the injury, and the burden of proof of such fact shall be upon the employer." State ex rel. L. & L.

[1][Maryland Casualty Company.]

Ind. Co. v. District Court, 141 Minn. 348, 170 N. W. 218; State ex rel. Green v. District Court, 145 Minn. 96, 176 N. W. 155. The commission found that relator's injury did not arise out of and in the course of his employment; hence it was not necessary to determine whether relator's drunkenness was the proximate cause thereof.

That a servant with a fixed salary should of his own motion start out on work for his employer after ten o'clock at night and invite a drunken person as a companion is not the ordinary occurrence. When, in addition thereto, it is considered that in the morning relator would necessarily pass Hugo in going to his employer's office for instruction as to the day's work, it seems incredible that he should have taken a journey some 15 miles late at night to interview the restaurant keeper at Hugo. The time and circumstances attending this trip, including the testimony as to intoxication and the features of the collision, are such as to throw discredit upon relator's testimony that the trip to Hugo was in his employer's business. His testimony, though not directly disputed, is not inherently so credible that the commission must accept it as true. We are not authorized to overthrow the finding of fact here assailed, for on the whole record it cannot be said that the evidence compels a finding that relator was in the course of his employment when going to or coming from Hugo, the evening in question.

The decision is affirmed.