# GUY GREEN v. COUNTY OF CHIPPEWA AND ANOTHER.[1]

October 27, 1933.

No. 29,555.

*L. N. Foster* and *E. A. Linnee,* for relators.

*John C. Haave,* for respondent.

[1]Reported in 250 N. W. 679.

*DIBELL, Justice.*

Certiorari on relation of the employer, Chippewa county, and the Travelers Insurance Company, its insurer, to review the order of the industrial commission awarding compensation to the plaintiff-employe, Guy Green.

The plaintiff was employed by the county as a maintenance man to gravel and keep in repair a stretch of county road six miles in length a few miles out of Montevideo. He worked with his team of mules and without much immediate supervision. He lived on a side road three-quarters of a mile from the road on which he was employed. He occupied a farm-house and barn and adjacent yard but did not cultivate the land. He furnished his team and the gears of a wagon at fixed wages for both. The dumping planks for the wagon were furnished by the county. He kept the dump-wagon where he lived and also kept there machinery, tools, and supplies owned by the county for road use. It is inferable that there was no proper place to keep them on the section of road which he kept in repair; they could not be left prudently on the road; they had to be kept somewhere, and so the place where he lived was used by the county in a small way as a depot or place of storage and of occasional repairs or other work.

On April 20, 1932, the day of the accident, the plaintiff drove from the road which he maintained to the place where he lived to feed his team and have his dinner. It was 15 minutes before noon, but a convenient time. He had just finished hauling a load of gravel and was to continue hauling in the afternoon. The place of supply was a few miles distant, and there was not time to haul another load before noon. He proceeded to unhitch his team preparatory to taking them into the barn, and, just as he was finishing, one of the mules kicked him and caused the injuries for which compensation was allowed.

The statute provides that "compensation  *  *  *  shall be paid by every such employer, in every case of personal injury or death of his employe, caused by accident, arising out of and in the course of employment." 1 Mason Minn. St. 1927, § 4269.

1 Mason Minn. St. 1927, § 4326 (j), provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment.' It is hereby declared:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; provided, that where the employer regularly furnishes transportation to his employes to or from the place of employment, such employes shall be held to be subject to this act while being so transported, but shall not include an injury caused by the act of a third person or fellow employe intended to injure the employe because of reasons personal to him, and not directed against him as an employe, or because of his employment."

The only question is whether the accident to the plaintiff arose out of and in the course of his employment; or, stating it otherwise, whether he was employed by the county at the time of his injury. If he was in the employment of the county within the meaning of the compensation act, there is no question but that the accident arose out of and in the course of such employment.

There are three cases having similar facts. State ex rel. Jacobson v. District Court, 144 Minn. 259, 175 N. W. 110; Jotich v. Village of Chisholm, 169 Minn. 428, 211 N. W. 579; Rosvall v. City of Duluth, 177 Minn. 197, 224 N. W. 840. In these cases the industrial commission found for the employer, and its decision in each case was sustained.

The case before us is one of difficulty. The employer's position is that the decision as a matter of law should be in its favor. This is the question.

In the Jacobson case, 144 Minn. 259, 175 N. W. 110, the employe was driving a city sprinkling wagon in Minneapolis. He furnished his team and the running gears of the wagon. The city furnished the tank. He kept the sprinkler in the rear of his house and stabled his horses in his barn. He commenced at eight and quit at five,

with an hour off at noon, and received a lump sum wage for himself and his team. On the night he was injured he drove home, stabled his team, and ate his supper. After supper he went to the stable to doctor one of the horses which had a sore neck, and the horse killed him. He was killed outside of work hours, at his own home, and when he was not doing anything for the city. The court found that the accident did not arise out of his employment and denied compensation. This was affirmed. Reference was made to the statute which is now § 4326(j).

In Jotich v. Village of Chisholm, 169 Minn. 428, 211 N. W. 579, the workman was engaged in hauling earth for the village at a specified wage per day. He furnished his team. The village furnished the dump-wagon. He was allowed to leave his work at 25 minutes before noon. The morning work hours regularly ended at noon, but it was customary to allow the men a few minutes. He drove to his home, a mile distant, for lunch and to feed his team. As he was unhitching, the team started suddenly, pulled the wagon upon him, and caused an injury. The commission found that the accident did not arise out of and in the course of his employment. Its finding was sustained. Reference was made to § 4326(j), before quoted.

In the Rosvall case, 177 Minn. 197, 224 N. W. 840, the employe was hired with his team on city street work. The city furnished the dump-cart which he used. Sometimes he used his own wagon. He kept the dump-cart at his home as a matter of convenience without giving it shelter or storage or care. Keeping it in his yard was not a part of his service to the city. When quitting time came in the afternoon he drove home, from wherever he might be at the time, without returning to the tool-house of the city, which was the designated meeting place in the morning before the men went to work. When driving to the meeting place at the tool-house in the morning, and not within his hours of work, his team ran away and he was killed. The commission denied compensation. Its order was affirmed. Again § 4326(j) was considered.

Section 4326(j) is not a usual provision. It is practically identical with Nebraska Comp. St. 1922, § 3075(c). In Speas v. Boone

County, 119 Neb. 58, 227 N. W. 87, 318, this situation was involved: The workman was employed on road work by the defendant county. He was doing much the work that the plaintiff in this proceeding did. About 11:30 he quit dragging the road, having arrived in front of his house, and drove his rig into the yard and unhitched. The horses went to the barn, and the plaintiff entered to tie them and was kicked and injured by one of them as he was going past. It was held that the defendant was liable under the compensation act, affirming the trial court. This case goes considerably further in sustaining a recovery than the cases from Minnesota which we have cited, where either the trial court or the industrial commission denied compensation. It goes further in support of a recovery than it is necessary to go in the case before us. Where a question of fact is involved, decisions by a fact-finding tribunal need not be in strict harmony upon the same facts in different cases; but it is to be noted that where a tribunal is established to find facts, no jury participating, the tendency of an appellate court is toward harmony of decision upon the same facts.

Section 4326(j) is not to be given a too restricted construction either as to hours of service or the premises of the employer. Simonson v. Knight, 174 Minn. 491, 219 N. W. 869; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290; Lienau v. N. W. Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945. The case before us is not at all like Simonds v. Reigel, 165 Minn. 458, 206 N. W. 717, where the employe had quit his employment at the noon period and had departed the premises.

It may be said fairly that the usual hours of work of the plaintiff were from seven in the morning until noon and from one in the afternoon until six. The plaintiff says that he counted hours from the time he took his team from the barn until he had it back in the barn. His construction upon this point is not controlling.

The county did not have premises in the sense that a factory has. One working on the road was on its premises within the meaning of the statute. It may have had a sort of plant or warehouse somewhere where it kept its equipment. This is not shown. It did not

own the yard about the house where the plaintiff lived; nor did the plaintiff own it; but he was in occupancy of it, and to that extent it was his. The defendant used the yard as a place where it kept some part of the county road equipment. The plaintiff had charge of it when it was there and on occasion repaired it or put it in condition for use. The dump-boards owned by the county were kept there—perhaps a circumstance of only slight significance. The road grader and other equipment was there. The county furnished grease with which the plaintiff greased machinery in his yard. To a limited extent the county used the yard as its premises. It found it useful for road purposes.

The conclusion is that it cannot be held as a matter of law that at the time of the accident the plaintiff was not working in the employ of the defendant.

The employe is allowed an attorney's fee of $100 in this court.

Order affirmed.