HENRY GOOD, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED SEPTEMBER 22, 1933. No. 28762.

*Fred A. Wright, Thomas J. O'Brien, Bernard J. Boyle* and *Harry Fleharty,* for appellant.

*Frost, Hammes & Nimtz, contra.*

Heard before GOSS, C. J., GOOD, DAY and PAINE, JJ., and CHASE, LOVEL S. HASTINGS and TEWELL, District Judges.

TEWELL, District Judge.

This action was brought under the provisions of the workmen's compensation act. From a decree of the district court for Douglas county awarding compensation to the plaintiff, Henry Good, hereinafter called appellee, the city of Omaha, hereinafter called appellant, appeals.

On the afternoon of April 1, 1932, appellee, an employee of appellant city, was riding upon and operating for and in the appellant city a street grader that was

being drawn by a tractor eastward on Spaulding street, which extends from east to west, at a point thereon immediately east of Thirty-sixth street. The tractor was being operated by one Harold Wiggs. The tractor and grader passed two boys and a girl who were on their way home from school and who were near the south edge of Spaulding street.

The appellee testifies that, when the grader had gone to a point a short distance east of the boys and girl, he became aware of one of the boys standing upon the rear axle of the grader, with his hand upon the seat upon which appellee was sitting. Appellee testified that he told the boy not to get on the grader, and told him that they were not allowed to haul anybody, and that a few moments later he was hit on the back of the head by what he judged to be a brick. Mr. Wiggs, the operator of the tractor and a witness for the defendant, testified that he looked back toward the tractor just in time to see appellee falling off the grader backward, whereupon he stopped the tractor, but that at that time the two boys and girl were on the bank some distance west of where they had been when the tractor passed them. Both appellee and Mr. Wiggs testify that a full sized brick was lying several feet behind the grader just after the injury and that its condition was different than it would have been had it been dug up by the grader.

The two boys, each about 15 years of age at the time of appellee's injury, testified that neither of them attempted to ride upon the grader and that neither of them threw a brick. Each of the boys testified that one of them, Percy Watkins, just after the grader passed, threw a clod of dirt at an advertising sign, located on the north edge of Spaulding street and a little east of where they stood, and that in doing so he hit appellee, when appellee was about 50 yards from them. Watkins said that the clod of dirt "kind of slipped out sideways" and that he had no intent to hit appellee. Immediately after being hit, appellee was taken to a doctor and then taken home

on the day of the injury. He was wholly incapacitated for several days and then went back to work, but could only work. a few days at a time. He worked for appellant off and on a few days at a time until June 22, 1932, and has not worked since.

Four different doctors were witnesses for appellee. X-ray photographs were taken and these disclosed a long fracture of the occipital bone in the skull and a fracture of one of the processes of a vertebra in the neck. Appellee was badly troubled for some weeks with bleeding of the nose and very bad headaches. Dr. L. C. Bleick, a specialist in the treatment of the ear, said that. hearing of the right ear is permanently impaired to the extent of 70 per cent. and of the left ear to the extent of 40 per cent.

Dr. Rich testified that the concussion of the brain was quite severe and that, judging from the history of the case and the symptoms still present ten months after the injury, it was his opinion that the disability was total and permanent. An absolute loss of accommodation in the eyes, constant dizziness and headaches are said, by the doctors, to be present.

From the testimony of the witnesses and the circumstances shown in the evidence, including the extent of the injuries, we conclude that the appellee was intentionally struck by a brick thrown by a boy whom he had ordered off the grader. One question involved is that of whether appellee's injuries arose "out of and in the course of his employment" within the meaning. of such phrase as used in the workmen's compensation act. This phrase is used in the workmen's compensation act of England and was construed with reference to street risks by the House of Lords in the case of *Dennis v. White & Co.*, 2 K. B. Div. 1916 (Eng.) 1. A like phrase has been largely used in American legislation. Many cases dealing with this phrase are cited in the case of *Socha. v. Cudahy Packing Co.*, 105 Neb. 691, and are not again cited here. Other cases dealing with the point under discussion are *City*

*of Fremont v. Lea,* 115 Neb. 565; *Coster v. Thompson Hotel Co.,* 102 Neb. 585; *Ridenour v. Lewis,* 121 Neb. 823. From the facts found as heretofore stated and from the law as stated in the cases above cited, we hold that the injury in this case arose out of, as well as in the course of, appellee's employment and was compensable under the workmen's compensation act.

Complaint is made of the allowance of total permanent disability. No one, of four doctors called as a witness, says that the disability of appellee is not total and permanent and some say affirmatively that, in their opinion, it is. The circumstances shown in the evidence are not inconsistent with total permanent disability. Mention has already been made of the nature of the injuries. We have read the entire bill of exceptions and conclude that the finding of total permanent disability, as far as facts are as yet ascertainable, is a proper finding.

The appellee is awarded an attorney fee in this court of $200, and the judgment of the trial court is in all things

AFFIRMED.