## Mabel Goodwin, Appellee, v. Omaha Printing Company et al., Appellants.

### Filed June 5, 1936. No. 29817.

*Kennedy, Holland, DeLacy & Svoboda*, for appellants.

*Smith & Schall* and *Gerald M. Vasak, contra.*

Heard before Goss, C. J., Rose, Good, Day and Carter, JJ., and Kroger and Irwin, District Judges.

Carter, J.

This suit was instituted by Mabel Goodwin to recover compensation for the death of her husband, Russell Goodwin, under the workmen's compensation law of this state. From a judgment awarding the compensation, the defendants have appealed.

The record discloses that Russell Goodwin, at and prior to his death, had been employed by the Omaha Printing Company of Omaha, Nebraska, as a salesman. It was his duty to call on and sell to various county officers in the state of Nebraska. He had been in the employ of the Omaha Printing Company for 15 years and, at the time of his death, was receiving wages in the amount of $45 a week. He used his own automobile in connection with his work and received five cents a mile from the Omaha Printing Company for the use thereof.

It further appears that on the morning of September 6, 1934, the deceased conferred with the officers of the Omaha Printing Company, after which he started in his

automobile for Columbus for the purpose of interviewing one of the county officials of Platte county on behalf of the Omaha Printing Company. He had with him in the car his own personal baggage, some canned goods and groceries which he had purchased for his own use, and two portfolios and a sample kit of printing supplies belonging to the Omaha Printing Company which he used in connection with his duties as a salesman.

About ten miles west of Omaha, he permitted one Harold Malmberg to ride in the car with him. At a point four miles west of Schuyler, Nebraska, Malmberg asked to be let out of the car so that he could go north from that point. After the car was stopped, Malmberg drew a gun and ordered Goodwin out of the car. As Goodwin was leaving the car, Malmberg shot him and left him lying in the road. Malmberg took the car and its contents and drove away. Goodwin suffered injuries from which he died. Malmberg was captured and is now serving a life sentence in the penitentiary for murder. The only issue before the trial court was whether or not Russell Goodwin died as a result of injuries received in an accident arising out of and in the course of his employment by the Omaha Printing Company.

It is not disputed that Goodwin died as a result of an accident within the meaning of section 48-152, Comp. St. 1929. Neither is it contended that the accident was not in the course of the employment. The question to be determined is whether the accident arose out of the employment.

The case of *City of Fremont v. Lea*, 115 Neb. 565, 213 N. W. 820, was one where compensation was allowed for the death of a fireman who was accidentally shot with a toy cannon in the hands of other firemen on the streets of Hastings while attending a state firemen's convention. In that case the court said: "It is insisted, however, that the accident occurred upon the public streets of Hastings, and that the danger created by the accidental discharge of the cannon was one to which the public, gen-

erally, was exposed, and not one which arose out of, or was inherent in, Lea's employment. Under the facts in this case, the question here raised is foreclosed by our previous decision. Even though the accident be sustained by reason of risk incidental to the streets, the accident, under the circumstances of this case, arises out of, as well as in, the course of his employment. *Coster v. Thompson Hotel Co.*, 102 Neb. 585." The court also cited with approval the case of *Dennis v. A. J. White & Co.* (1917) A. C. (Eng.) 479, Ann. Cas. 1917E, 325, in which the court said: "Where a workman is sent into the streets on his employer's business, whether habitually or occasionally, and whether on foot or on a bicycle, or on an omnibus or a car, and he meets with an accident by reason of a risk of the streets to which his employment exposes him, the accident arises out of as well as in the course of his employment; and it is immaterial that the risk which caused the accident is one which is shared by all members of the public using the streets under the like conditions."

In *Coster v. Thompson Hotel Co.*, 102 Neb. 585, 168 N. W. 191, the deceased was engineer and general foreman of mechanical work for a hotel owned by defendant. It was his custom to buy materials for repair work, and, if quickly needed, take them to the hotel himself. On his way to a plumber's shop for materials, his motorcycle collided with a street car and injuries were caused which resulted in his death. The court, in affirming a compensation award, said: "The next point argued by the defendant is that the death 'was not caused by accident arising out of and in the course of employment.' We cannot take this view. It was a part of Coster's duty to obtain materials. He was his own master as to his hours and place where he might engage in his master's service. When he ordered material by telephone from his house he was in the course of his employment, and when he was accidentally struck and killed upon the street while on the way to procure materials, the accident arose out of

the employment. Both the order for the goods and the going to procure them were strictly within his duties. The fact that he rode upon a motorcycle which he commonly used in performing errands and in going to and from his home does not alter the case. He had the right to use such instrumentalities as were best fitted to perform his master's work."

In the case of *Good v. City of Omaha,* 125 Neb. 307, 250 N. W. 61, where plaintiff was engaged in grading roads and was struck by a brick hurled at him by some boys whom he had chased off his machine, the court said: "When an employee is engaged to work upon a public street in his master's business and is there injured, while engaged in such employment, by a missile intentionally thrown at him by another, without provocation from the employee, such injury arises from a risk of the street that is such as to cause it to arise out of and in the course of his employment."

In the case of *Beem v. H. D. Lee Mercantile Co.,* 85 S. W. (2d) (Mo.) 441, 100 A. L. R. 1044, the court said: "Death of traveling salesman occurring while he was being robbed on highway as he was traveling between towns on his usual route *held* compensable as 'arising out of employment,' which term signifies a causal connection between death and employment, since salesman's employment reasonably covered traveling over such road and being exposed to hazard of highway robbery; it being immaterial whether salesman was killed while resisting robbery of his own money or that of his employer."

In the case of *Industrial Commission v. Pueblo Auto Co.,* 71 Colo. 424, 207 Pac. 479, the court said: "An auto salesman, driving a machine belonging to his employer and returning to town after making a sale, was attacked and killed by persons whose purpose was to obtain the automobile in which he was riding. *Held,* that the industrial commission was justified in awarding compensation to his dependent widow, his death having been occasioned by an accident arising out of, and in the course of his employ-

ment." Also, in *Industrial Commission v. Hunter*, 73 Colo. 226, 214 Pac. 393, the court said: "A water commissioner whose duties required him to travel over his district, while riding in the automobile of another, who had sold him a car, was making inspections of streams and ditches on the way from his home to the automobile agency. He was shot and killed by a person who attempted to steal the car. *Held*, this his death was proximately caused by an accident arising out of, and in the course of his employment."

In the case at bar, the duties of the deceased required him to travel the highway where the accident occurred. He was killed while being robbed of property, a part of which was his own and a part that of the employer. A salesman who is required to travel from town to town for the purpose of selling his employer's goods is as much within the employment in so doing as he is when selling goods at such towns. Highway robbery is a hazard of the highway and a hazard of an employee whose employment requires him to travel the highways in the service of his employer. The contention is made that the deceased brought the injuries upon himself by inviting Malmberg to ride with him. The record does not disclose that Goodwin disobeyed any directions or instructions of his employer in so doing. While it is true that highway robbery and murder are sometimes committed on the highways, yet it cannot be said that such acts are so common that the inviting of a "hitchhiker" to ride in the car is anything more than a charitable act. For aught we know, if Goodwin had not stopped when hailed by Malmberg, he might have been shot and robbed anyway. Robbery is generally planned and committed not because of but regardless of the acts and wishes of the victim. A traveling salesman in inviting a "hitchhiker" to ride in his automobile, under such circumstances as are shown in this case, does not step aside from his employment and act for himself on business or pleasure of his own. He is still within the scope of his employment. After a

consideration of all the facts, and in view of the authorities cited, we are constrained to hold that the accident arose out of and in the course of the employment. The judgment of the trial court is correct.

AFFIRMED.